IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAUER-PILECO, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2056 |
| | § | |
| SCHEFFLER NORTHWEST, INC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Bauer-Pileco, Inc., a Conroe, Texas construction-equipment leasing company, sued two of its clients, Scheffler Northwest and DJ Scheffler, alleging that they owe money for equipment rentals and related services. (Docket Entry No. 15). DJ Scheffler moved to dismiss for lack of personal jurisdiction here in Texas. (Docket Entry No. 25). Bauer-Pileco responded, and DJ Scheffler replied. (Docket Entries No. 34, 35). Based on the briefs, the complaint allegations, the record evidence properly considered, and the applicable law, DJ Scheffler's motion to dismiss is granted. The reasons are explained in detail below.

**I.     Background**

This dispute concerns alleged nonpayment for and damage to several pieces of rented construction equipment. Deciding this motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court does not require a full account of the plaintiffs' allegations, but the motion does require the court to analyze the parties' factual contentions relevant to personal jurisdiction.

Between September 2011 and July 2013, Scheffler Northwest rented various pieces of construction equipment from Bauer-Pileco, each time entering into a rental contract. Scheffler

Northwest also purchased "various parts and repair services" for the equipment. Bauer-Pileco alleges that Scheffler Northwest failed to pay as required under the rental and purchase contracts, and that Scheffler Northwest owes more than $800,000 in late payments. As a result of this account delinquency, Bauer-Pileco refused to sell parts to both Scheffler Northwest and DJ Scheffler, which also had an active rental account with Bauer-Pileco.

The issue before the court arises from the two defendants' efforts to have their accounts reopened. On August 4, 2015, DJ Scheffler wrote to Bauer-Pileco, stating in relevant part as follows:

> [DJ Scheffler] and [Scheffler Northwest] has been restricted on parts purchases for over a year now and we must be able to purchase parts and have th eability to rent as needed in order to continue profitable operations. This is crucial to not only pay the Bauer invoices but the other vendors as well. We have had a rig that has not been used because of this and it has significantly impacted our business. With the goal of reestablishing our ability to make purchases and getting our account balance paid we feel that making [a $33,190.73 payment to settle a disputed item on the DJ Scheffler] account as referenced above and paying $50,000 towards the [Scheffler NW] account shows our willingness and desire to move forward with Bauer Pileco. There are some major discrepancies on the [Scheffler NW] account that need to be discussed and negotiated; therefore, we are requesting a meeting with you next week to get this resolved and establish a repayment plan that we can stay committed to.
> We have great plans for both [DJ Scheffler] and [Scheffler NW] and have restructured our operations and personnel. We would like for you and your team at Bauer Pileco to play a key role in that future success. If you agree with this letter, the prompt payment proposed of $88,190.71 and are willing to open our account for parts purchases we will issue payment and discuss a time where we can meet and resolve the [Scheffler NW] account balance.

(Docket Entry No. 11-3). The letter was signed by "DJ Scheffler, Inc."

The complaint pleads several breach-of-contract and quasi-contract claims against Scheffler Northwest, which consented to the jurisdiction of a Texas court in a forum-selection clause in the rental contracts. The complaint also pleads several claims against DJ Scheffler, but DJ Scheffler

2

did not consent to Texas jurisdiction.

The complaint first asserts an alter-ego theory, alleging that the August 2015 letter demonstrates that DJ Scheffler and Scheffler Northwest share each others' debts. The complaint also alleges that:

- Dale Scheffler, the current president of DJ Scheffler, was at one point the president of Scheffler Northwest;

- Cindy Scheffler is the secretary and treasurer of both companies;

- Dale Scheffler regularly comunicated on behalf of both companies; and

- both companies share office space in California.

To these factual allegations, Bauer-Pileco adds a series of allegations based on information and belief:

- Scheffler Northwest is wholly owned and controlled by DJ Scheffler, and DJ Scheffler controls its internal affairs and operations;

- Scheffler Northwest is an alter ego of DJ Scheffler, and the separateness of the two companies has ceased;

- Scheffler Northwest is undercapitalized and unable to pay its debts, and the other Scheffler entities use it as a shell to pick and choose what debts to pay; and

- Scheffler Northwest will not be able to pay any judgment that Bauer-Pileco secures. Bauer-Pileco also pleads two claims directly against DJ Scheffler.

First, it argues that, in the August 2015 letter, DJ Scheffler offered to guarantee Scheffler Northwest's debt to Bauer-Pileco. Bauer-Pileco accepted the offer, but DJ Scheffler did not pay Scheffler Northwest's debt and therefore breached the agreement. Second, Bauer-Pileco alleges that promissory estoppel should bar DJ Scheffler from refusing to pay the amounts owed.

DJ Scheffler contests these allegations and moves to dismiss. The motion is submitted with evidence. That evidence includes the following:

3

- An affidavit by Mitch Bergman, former General Manager of Scheffler Northwest, stating that Scheffler was a Nevada corporation with offices in Vancouver, Washington and Pomona, California. (Docket Entry No. 11-1). Attached to that affidavit are Scheffler Northwest's certificates and articles of incorporation in Nevada. (Docket Entry No. 11-2).

- A Scheffler Northwest board of directors resolution accepting a $50,000 loan from DJ Scheffler. The resolution states that the loan—a secured promissory note bearing a 0.87% interest rate, payable on demand—was "for purpose of making payment to Pileco/Bauer . . . ." (Docket Entry No. 11-3).

- An affidavit by Cindy Scheffler, stating that DJ Scheffler is a California company that uses a different website, corporate logo, and corporate stationery from Scheffler Northwest. (Docket Entry No. 26-1). Ms. Scheffler also states that DJ Scheffler keeps its books and bank accounts separate from those of Scheffler Northwest. (*Id.*). She attests that DJ Scheffler made the $50,000 payment to Bauer-Pileco under a loan agreement with Scheffler Northwest, and that the payment was made for DJ Scheffler's own business purposes. Bauer-Pileco's refusal to provide parts to DJ Scheffler was taking its toll, and DJ Scheffler was eager to maintain good relations. (*Id.*).

- An affidavit by Dale Scheffler, stating that he is the president of DJ Scheffler; that the company's principal place of business is in Pomona, California; and that DJ Scheffler is a California corporation. (*Id.*). Mr. Scheffler also stated that DJ Scheffler made a $50,000 loan to Scheffler Northwest for the Bauer-Pileco account to "gain interest and to curry favor with Bauer Pileco for DJ Scheffler, Inc.'s, own business purposes." (*Id.*). DJ Scheffler needed to rent equipment from Bauer-Pileco, and thought the loan and payment would help them do so. Scheffler Northwest repaid DJ Scheffler in full and with interest. (*Id.*). The affidavit also describes Scheffler Northwest as independently managed by separate officers who had full discretion to make day-to-day business decisions without DJ Scheffler approval. (*Id.*). DJ Scheffler's approval was needed only for major capital expenditures. (*Id.*).

Bauer-Pileco has not submitted controverting evidence. The allegations and evidence are analyzed in light of the applicable legal standards.

## II.     The Legal Standards

### A.     Personal Jurisdiction Generally

A federal court may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising

jurisdiction is consistent with due process. *See Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process permits personal jurisdiction over a nonresident defendant with "minimum contacts" with the forum state, if exercising jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Id.* "Minimum contacts" can "give rise to 'specific' personal jurisdiction" or "to 'general' personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002). "[C]ontinuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 134 S. Ct. at 761 (emphasis omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "For an individual, the paradigm forum for the exercise

of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* at 2851 (citation omitted). A court asks "whether there was 'some act by which the defendant purposefully availed [himself] of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations marks omitted). Though the defendant's contacts with the forum must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (internal quotation marks omitted).

Once a plaintiff has established minimum contacts, the burden shifts to the nonresident defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice. *Walk Haydel*, 517 F.3d at 245. "[I]t is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). "In conducting the fairness inquiry, [courts] examine (1) the burden on the nonresident defendant, (2)

the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

### B. Business Contacts with Forum Residents

The Fifth Circuit has frequently admonished that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986). The circuit

> has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant. *See, e.g., Holt*, 801 F.2d at 778 (finding no specific jurisdiction over nonresident defendant where nonresident defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); [*Stuart v. Spademan*], 772 F.2d 1185, 1192 (5th Cir. 1985) (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas).

*Freudensprung*, 379 F.3d at 344. The forum-state plaintiff must do more than allege a contract with the nonresident defendant.

### C. Jurisdictional Veil-Piercing

"[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other." *Access Telecom Inc. v. MCI*

7

*Telecom*, *Inc.*, 197 F.3d 694, 717 (5th Cir. 1999) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983)). There is a presumption in favor of corporate separateness. *Dickson Marine Inc. v. Panalpina*, *Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). However, "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations . . . are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). The plaintiff has the burden of establishing a *prima facie* case of jurisdiction and must present evidence to establish an alter-ego relationship. *Hargrave*, 710 F.2d at 1160. "[T]he alter ego test for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability." *Stuart*, 772 F.2d at 1198, n.12 (internal citations and quotation marks omitted); *The Richards Group*, *Inc. v. Brock*, 2007 WL 700896, at \*3 (N.D. Tex. 2007).

The Fifth Circuit has identified a "laundry list" of factors for district courts to apply in making an alter-ego determination. *See United States v. Jon-T Chems.*, *Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985). These factors are: (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters for each entity; (3) the sharing of common officers and directors; (4) the observance of corporate formalities; (5) the maintenance of separate accounting systems; (6) the parent corporation's exercise of

8

complete authority over the general policy of the subsidiary; and (7) the subsidiary's exercise of complete authority over its daily operations. *Hargrave*, 710 F.2d at 1160. In *Hargrave*, the court concluded that "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego between two corporations." *Id.* Rather, the plaintiff must present *prima facie* evidence that "[t]he degree of control exercised by the parent [is] greater than that normally associated with common ownership and directorship." *Id.* (citing *Reul v. Sahara Hotel*, 372 F.Supp. 995, 998 (S.D. Tex. 1974)).

### D. The Procedural Framework for Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case" if the district court does not conduct an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). In deciding whether personal jurisdiction exists, "the district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Little v. SKF Sverige AB*, No. H–13–cv–1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)). "Proof by a preponderance of the evidence is not required." *Johnston*, 523 F.3d at 609 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990)). "'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.'" *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg,*

9

*Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).  "When the factual differences are found in favor of [a plaintiff] at this motion phase in the litigation . . . [it] has presented a prima facie case for personal jurisdiction." *Id.*  In short, the "court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations." *Little*, 2014 WL 710941, at *3 (citing *Johnston*, 523 F.3d at 609).

**III.   Analysis**

Neither the breach-of-guaranty nor promissory-estoppel claim is sufficient for personal jurisdiction in Texas.  As a matter of law, there is no guaranty agreement or promise on which a reasonable person would rely.  The August 2015 letter from DJ Scheffler to Bauer-Pileco is unambiguous.  It is not an agreement for DJ Scheffler to assume liability for Scheffler Northwest's debts.  Instead, the letter makes it very clear that it invites Bauer-Pileco to negotiate.  The letter states in part that "[t]here are some major discrepancies on the [Scheffler NW] account that need to be discussed and negotiated; therefore, we are requesting a meeting with you next week to get this resolved and establish a repayment plan that we can stay committed to."  The letter continues: "If you agree with this letter, the prompt payment proposed of $88,190.71 and are willing to open our account for parts purchases we will issue payment and discuss a time where we can meet and resolve the [Scheffler NW] account balance."  The letter is an invitation to negotiate—an "agreement to agree"—and does not support an inference that DJ Scheffler intended to guarantee Scheffler Northwest's debts to Bauer-Pileco.  *E.g.*, *Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, No. CIV.H-04-2220, 2007 WL 1256612, at *15 (S.D. Tex. Apr. 30, 2007).  There is no enforceable guaranty agreement.  No reasonable person would rely on the letter as a guaranty or promise.  The letter cannot serve as a basis for personal jurisdiction over DJ Scheffler.

The alter-ego claim also fails. Bauer-Pileco argues that: (1) the two Scheffler companies shared officers, directors and office space; (2) DJ Scheffler exercised "some degree of control" over Scheffler Northwest, as evidenced by Scheffler Northwest's inability to make large capital expenditures without permission both from Dale Scheffler and DJ Scheffler, Inc.; (3) DJ Scheffler voluntarily assumed Scheffler Northwest's debt by paying $50,000 on its account, demonstrating that the two companies are not separate; and (4) Scheffler Northwest is undercapitalized and unable to pay its debts. These arguments, taken together, are not sufficient to establish an alter-ego relationship for jurisdictional purposes.

Common officers, directors, and office space do not create an alter-ego relationship between two companies. *E.g., Hargrave*, 710 F.2d at 1160. Nor does a corporate parent's exercise of some degree of control over major budget and capital expenditure issues. *E.g.*, *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007). "Appropriate parental involvement," as opposed to all-out domination of the internal operations of the subsidiary—"includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions . . . ." *Id.*

While Bauer-Pileco's allegation about DJ Scheffler's $50,000 payment is slightly closer to the mark, the uncontroverted evidence shows that the payment was a loan—albeit at favorable terms—agreed to after separate and formal decisions by the two companies' boards. DJ Scheffler provided evidence, which Bauer-Pileco does not controvert, showing that DJ Scheffler made the loan to further its own business interest in maintaining a positive relationship with an important equipment rental supplier. Because the letter and payment were not a guaranty agreement, Bauer-Pileco's argument that "[s]eparate and distinct companies do not spontaneously offer to assume each

11

other's debts" is unpersuasive.

Bauer-Pileco's final argument is that Scheffler Northwest is undercapitalized and that DJ Scheffler uses it as a shell to pick and choose what debts to pay. Bauer-Pileco presents no evidence to back this claim, and its allegations are threadbare and conclusory. Bauer-Pileco has not plausibly alleged or shown that Scheffler Northwest is a shell corporation. Nor would undercapitalization, without more, be sufficient to show alter ego or to pierce the corporate veil. *Ramirez v. Hariri*, 165 S.W.3d 912, 917 (Tex. App.—Dallas 2005). Bauer-Pileco provides an insufficient basis for the court to conclude that Scheffler Northwest is Buer-Pileco's alter ego.

The uncontroverted evidence shows that DJ Scheffler and Scheffler Northwest maintained separate books and accounts, used different corporate letterhead and logos, observed the necessary corporate formalities at the officer and director level, and otherwise operated as two separate companies. There is no basis to impute Scheffler Northwest's contacts to DJ Scheffler for jurisdictional purposes, and the court will not do so.

## IV.    Conclusion

DJ Scheffler's motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 25), is granted.

SIGNED on April 4, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge